# SUPREME COURT OF TENNESSEE,

FOR THE

# WESTERN DIVISION,

JACKSON, . . . . . . . . . . . . APRIL TERM, 1886.

16L 225
1pi 529
2pi 393

SAMUEL H. COWARD and WIFE . v. EAST TENNESSEE, VIRGINIA & GEORGIA RAILROAD COMPANY.

RAILROADS. *Common carrier. Baggage. Wearing apparel.* C. purchased for himself and wife a through ticket over several connecting lines of railroads and signed a contract attached, in which were the following terms: First. "In selling this ticket this company acts as agent and is not responsible beyond its own line." Seventh. "None of the companies represented in this ticket will assume any liability on baggage except for wearing apparel, and then only for a sum not exceeding one hundred dollars." The trunk of Mrs. C. was robbed, containing wearing apparel, including a watch and chain and a diamond pin. Trunk was transferred in good condition from defendant company to the connecting road. *Held:* First, that the first item in the contract had reference alone to personal injuries. Second, that the first company was liable for the loss of baggage in case of a through ticket. Third, that common carriers can not limit their liability or protect themselves in any manner against the consequences of their own negligence, or the negligence of their agents. Fourth, that the watch and chain and diamond pin, under the facts of this case, were wearing apparel. It is impossible to prescribe any definite rule in respect to what shall be deemed baggage. It certainly

15—VOL. 16.                                    (225)

Coward and Wife *v.* Railroad Company.

includes articles of necessity and personal convenience usually carried by passengers for their personal use, and these depend upon the habits, tastes and resources of the passenger.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

Taylor & Carroll for complainants.

Poston & Poston for defendants.

Turney, J., delivered the opinion of the court.

On July 22, 1884, Samuel H. Coward bought from the agent of defendant, at Memphis, tickets for himself and family to Waukesha, Wisconsin, at the price of $27.95 for the round trip—the regular price being $38.20. Coward fully understood the contract attached to the tickets and signed it. The first item in the contract is: "In selling this ticket this company acts as agent, and is not responsible beyond its own line." The seventh is: "None of the companies represented in this ticket will assume any liability on baggage except for wearing apparel, and then only for a sum not exceeding one hundred dollars."

The route was over the Memphis & Charleston, Illinois Central and Chicago & Northwestern Railroads. Mrs. Coward's trunk was checked in the usual way on the 23rd, when Coward and wife left. The trunk was transferred in good condition at Grand Junction by defendant company.

The passengers reached Waukesha the next day at

12:30 o'clock. The trunk did not arrive until late in the evening, when it was discovered the lock had been filed and a watch and chain and diamond pin had been stolen. These articles were such as are worn by ladies who occupy the position of Mrs. Coward and in her circumstances. "It is usual and customary for ladies, who can afford it, to wear such ornaments; they are regarded not only as conveniences, but as indispensable necessities to dress." "It is customary for ladies who leave their homes in the cities of the South and Southwest for the summer, to carry with them their jewelry to summer resorts."

It is first objected by the company, that Mrs. Coward claims the jewelry as her separate property, given to her by her mother, her husband and uncle; that no separate estate is shown, etc., therefore she is not entitled to sue; that the jewelry belonged to the husband, and she is an improper party, etc.

The husband joins the wife and with her makes the claim. Both being before the court, the husband will be estopped by decree in this case from making any further claim to the property. It can make no difference to the defendant, if its liability is fixed, to whom the damages may be awarded. There is a proper party before the court.

It is next insisted the tickets were sold upon a special contract reducing the rates.

It is obvious the first item or agreement in the contract, that the selling company should not be responsible beyond its own line, had reference alone to injuries to the person, and this meaning was given to

it by the company when it inserted the seventh clause, already quoted. The question then, is, does the seventh clause protect the company from liability for loss after the trunk left its line? In *Railroad* v. *Weaver*, 9 Lea, 51, Judge Cooper says: "A through contract as to the passenger will be a through contract as to his baggage, in the absence of a different arrangement. But, as in the case of goods, although the first carrier may contract and be responsible for the entire transportation, any subsequent and auxiliary carrier, to whose fault it can be traced, will be liable to the owner for the loss of baggage."

"The courts of the several States concur in holding the first company liable for loss of baggage in the case of a through ticket."

So that, if there is a liability at all in this instance, there can be no doubt it attaches to the first company, and we now inquire whether it shall exceed the amount fixed by the seventh clause of the contract. Can the company, by contract, limit its liability for a loss under the facts of this case? In *Dillard Bros.* v. *Railroad Company*, this court say: "The common carrier may, by general stipulations based on sufficient consideration, limit his liabilities, except such as grow out of his negligence or bad faith": 2 Lea, 293.

"Common carriers will not be permitted, under any circumstances or in any manner, to protect themselves against the consequences of their own negligence in the carriage of either goods or passengers. They may become the carriers of goods gratuitously, and the law will then hold them only liable as mandatories, that

Coward and Wife *v.* Railroad Company.

is, only for losses occurring through gross negligence. But so long as they are compensated for the carriage, they are common carriers, contract or no contract ": Hutchinson on Carriers, sec. 44.

A common carrier may relieve himself from the strict liability imposed on him by the common law by a special contract, but he can not contract for exemption from the consequences of his own or his agent's negligence. Where a horse was shipped by railroad, the bill of lading was signed by the carrier and the agent of the shipper, and provided, among other things, "value not to exceed $100," which was inserted in the bill of lading by the carrier, and through the carrier's negligence the horse was injured : held, in an action by the shipper for damages that his recovery was not limited by the words "value not to exceed $100:" *Kansas City, St. J. & C. B. Railroad Company* v. *Simpson,* Supreme Court of Kansas, digested in American Law Review, March and April, 1884, citing Pacific Reporter, March 6, 1884.

In *Railroad Company* v. *Lockwood,* 17 Wall., 358, the court quotes approvingly the language in *Davidson* v. *Graham,* 2 Ohio State, 131, that: "A carrier can not protect himself from losses occasioned by his own fault. He exercises a public employment, and diligence and good faith in the discharge of his duties are essential to the public interest. And public policy forbids that he should be relieved by special agreement from that degree of diligence and fidelity which the law has exacted in the discharge of his duties." The Supreme Court then say : "It is ar-

gued that a common carrier, by entering into a special contract with a party for carrying his goods or person on modified terms, drops his character and becomes an ordinary bailee for him, and therefore may make any contract he pleases. That is, he may make any contract whatever, because he is an ordinary bailee, and he is an ordinary bailee because he has made the contract. We are unable to see the soundness of the reasoning. It seems to us more accurate to say that common carriers are such by virtue of their occupation, and not by virtue of the responsibilities under which they rest." * * *

"It is contended that, though a carrier may not stipulate for his own negligence, there is no good reason why he should not be permitted to stipulate for immunity for the negligence of his servants, over whose actions, in his absence, he can exercise no control. If we advert for a moment to the fundamental principles on which the law of common carriers is founded, it will be seen that this objection is inadmissible. In regulating the public establishment of common carriers, the great object of the law was to secure the utmost care and diligence in the performance of their important duties, an object essential to the welfare of every civilized community." * * *

"It is obvious, therefore, that if a carrier stipulate not to be held to the exercise of law and diligence, but to be at liberty to indulge in the contrary, he seeks to put off the essential duties of his employment. And to assert that he may do so seems almost a contradiction in terms."

The opinion is an able and exhaustive review of the English and American cases upon the questions. We have not seen proper to refer, in this opinion, to many of the cases cited, deeming a reference to the opinion sufficient.

The trunk did not reach the point of destination until several hours after the arrival of Coward and family; when it did arrive the locks had been filed and the goods stolen. The contract was, as we have seen, that passenger and baggage were to be transported by the same train: this was not done. It is plain that it required time, labor and risk of detection to open and rifle the trunk. If the company had been represented in the baggage department by a fit and reliable agent, it could not have been done in the baggage car. The fact that the trunk arrived on a later train, shows that some one of the railroad agencies had neglected to transport it as was its duty. The failure was not only a violation of the contract which the law implies, and of the limited contract which is set up in defense, but is also gross negligence. The separation of the passenger and the baggage, and their transportation by different trains, is no where explained. Whether in the *interim* between trains the trunk was left exposed and was rifled at some station or depot, is left to conjecture. When the fact appeared it was upon the defendant to show why it had not shipped the baggage as it had undertaken and as the law required it.

It is argued that the articles were not wearing apparel, and therefore not such baggage as for the loss of which the defendant can be held responsible.

Coward and Wife *v.* Railroad Company.

In *Bomar* v. *Maxwell*, 9 Hum., 622, Judge Mc-Kinney says: " It is obviously impracticable to prescribe any uniform or very definite rule in respect to what shall be deemed baggage. This must be left to the jury to determine in each particular case, from the habits, rank and condition of the party, the extent and reasonable expenses of the journey, together with all the circumstances relevant to the inquiry."

In *Johnson* v. *Stone*, 11 Hum., 420, the court say: " It is not practicable to state with precise accuracy what shall be included by the term baggage. It certainly includes articles of necessity and personal convenience usually carried by passengers for their personal use, and what these may be will very much depend upon the habits, tastes and resources of the passenger."

In Hutchinson on Carriers, section 679, it is said: " It is impossible to define with accuracy what will be considered baggage within the rule of the carrier's liability. It may be said, generally, that by baggage we are to understand such articles of personal convenience or necessity as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the trunks of passengers, which are not, however, designed for any such use, but for other purposes, such as sale and the like. But it is evident that, that which may be convenient or necessary for one person might not be for another, or that which might appropriately and properly be classed as baggage upon one journey and for one purpose, might not be so for another journey and for

another purpose.    That which might be necessary for the convenience of a female passenger might not be so for one of the other sex.    That which might be a convenience and almost a necessity for a traveler in one condition of life, might be superfluous and wholly useless in the case of another, whose habits and condition in life were wholly different."

In *Railroad Company* v. *Fraloff*, 10 Otto, 24, the defendant in error had brought with her to the United States six trunks, containing a large quantity of wearing apparel, including many elegant, costly dresses, and rare and valuable laces, which she had been accustomed to wear when on visits, and to theaters, dinners, balls and receptions.    On her railroad passage from Albany to Niagara Falls one of the trunks was broken and more than two hundred yards of dress lace abstracted. She sued the company and obtained judgment for $10,000.    The Supreme Court of the United States said : " In *Hannibal Railroad Company* v. *Swift*, this court, speaking through Mr. Justice Field, said that the contract to carry the person only implies an undertaking to transport such a limited quantity of articles as are ordinarily taken by travelers for personal use and convenience, such quantity depending, of course, upon the station of the party, the object and length of his journey, and many other considerations."

To the same effect, in a decision of the Queen's Bench, in *Moscow* v. *Great Western Railway*, when Chief Justice Cockburn announced the true rule to be : " That whatever the passenger takes with him for his personal

Coward and Wife *v.* Railroad Company.

use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey, must be considered personal baggage."

" To the extent, therefore, that the articles carried by the passenger for his personal use exceed in quantity and value such as are ordinarily and usually carried by passengers of like station and pursuing like journeys, they are not baggage for which the carrier, by general law, is responsible as insurer." * * *

"The laces in question, confessedly, constituted a part of the wearing apparel. They were adapted to and exclusively designed for personal use, according to her conveyance, comfort or taste, during the extended journey upon which she had entered. They were not merchandise, nor is there any evidence that they were intended for sale or for the purpose of business."

Recurring to the facts of the case in hand, the above language applies to them as aptly and as exactly as if the court in that case had been particularly and closely weighing and passing upon them. The evidence here brings the case under the rule there laid down, not only in its essential parts, but even in the minutiæ. Upon the principles extracted from the authorities, as well as upon reason, we think the company had no lawful right to restrict its liability against negligence or bad faith, and if it had, the facts show such gross and inexcusable negligence in some of the connecting railroad lines as to fix responsibility for the loss.

The jewelry is estimated in the proof to be worth from $1,300 to $1,500. A decree will be rendered for $1,400. The decree of the chancellor is reversed. Defendant will pay costs.